## NUGENT vs. THE STATE.

1. The City Court of Mobile has power to *originate* criminal proceedings at a special term.

2. An objection to the Grand Jury by which an indictment is found, can only be taken by plea in abatement.

3. An indictment which alleges " that J. N., late of said county, in and upon one H. S. (she, the said H. S. then and there being a female child under the age of ten years,) feloniously did make an assault, and her, the said H. S. then and there feloniously did abuse *in the attempt carnally know,*" is fatally defective in not specifying with sufficient certainty and precision the person upon whom the attempt was committed.

ERROR to the City Court of Mobile. Tried before the Hon. Alexander McKinstry.

CAMPBELL, for the plaintiff in error:

1. The Criminal Court of Mobile County cannot at an adjourned term originate an indictment against a prisoner under its original charter.—Acts 1846 ; 5 Mass. 435 ; Clay's Dig. 202, § 20-1 ; 6 Wheat. 106.

2. The Circuit Court had no authority, under the statutes of this State, to hold a special term for the finding of indict-

Nugent v. The State.

ments, and trial of prisoners, without their consent as shown by an application to the judge on their behalf.—Clay's Dig. 293, § 24, 26; ib. 454, § 26; 2 Pike's Ark. R. 251.

3. The grand juries summoned under the Penal Code (Clay's Dig. 454) apply to the cases in which the prisoner may call for a trial. The power to hold special terms for the trial of criminal causes under the act of 1807, was repealed in 1826. Special adjourned terms are confined to the civil docket by the act of 1826.

4. If the court should hold that a special adjourned term, for the despatch of business, allows the finding of a bill of indictment and trial, the court must be organized in accordance with the act.

5. The indictment is fatally defective. It is not a full, direct, nor express description of the offence mentioned in the statute.—Reavis' Dig. 399, § 208; The State v. Halder, 2 McCord, 377; Hawkins' Pleas, 343, § 111.

6. A court held at a time not allowed by law is illegal, and its proceedings are *coram non judice.*—1 Ala. 351; 2 Scam. 227.

ATTORNEY GENERAL, for the State:

1. Does the omission of " to," which, according to strict grammar, should have been prefixed to the word " know," as the sign of the infinitive mood, vitiate the indictment?

Every indictment should be deemed sufficient, which, in addition to technical requirements, states the offence so plainly that it may be easily understood by the defendant and the jury, and if the sense be clear, nice exceptions ought not to be regarded.— 2 Hale 193; 5 East, 244; (see new edition 3 East, 139;) Regina v. Ann Jones, 9 Car. & P. 761, (38 E. C. L. R.;) The King v. Wright, 28 E. C. L. R. 123; The King v. Dale, 13 Price, 171; (6 Eng. E. R. 71;) The State v. Wimberly, 3 McCord, 103; Com. v. Wentz, 1 Ashmead, 269, 272; 1 Chitty Cr. Law, 171, top page; Worrell v. The State, 12 Ala. 732; State v. Bullock, 13 ib. 417; McKinny v. People, 2 Gilm. 548.

The omission of " to," as above stated, is a mere clerical error, and will be supplied by intendment.—Simmons v. Com., 1 Rawle, 142; Williams et al. v. Williams, 1 Verm. 271; State v. Brady, 14 ib. 355; State v. Molier, 1 Dev. 266; 2 Hawk. Ch. 25, § 86; 1 Chitty Cr. L. 293, (note,) cites 13 Price 172;

1 Cow. 230; Thacher's Cr. Cases; State v. Whitney, 15 Vermont, 298.

The grammatical necessities of the sentence plainly indicate that the verb "know" is in the infinitive mood, and that " to" is the word omitted. It is, then, a clerical error which will be supplied.

The repetition of the words "her, the said Hannah Smith," after the word "know" would have been needless, and in violation of correct grammar. The entire sentence shows that the word "know" refers to Hannah Smith, and to no one else. If it be doubtful to whom the words " carnally know" refer, that sense will be placed upon those words which will support the indictment, and not that construction which will defeat it. The only meaning of those words to support the indictment will refer them to Hannah Smith.—1 Chitty Cr. Law 231, (a) top page; 5 East 244, (new ed. 234;) 2 Hale 184.

If the 30th rule of Syntax, in Bullion's Grammar be correct, then the words " Hannah Smith" should not have been repeated after the word "know." For "her, the said Hannah Smith," is the member in the sentence referring to two different clauses, to wit, " did abuse" and " to know," and as such is equally applicable to both. It should be repeated after " abuse" and understood after " to know."—See Bullion's Eng. Gram. 125.

Our laws, unlike the old English Criminal Code, are framed in a spirit of humanity, and should be so administered as to afford " a shield to protect the innocent, and a sword to punish the guilty."—McKinny v. People. 2 Gilm. supra, 551.

2. The Criminal Court of Mobile has the same power that Circuit Courts have.—Acts 1846, 30, § 4. The Circuit Courts have power to hold special terms for the " trial of criminal causes," (Clay's Dig. 293, § 24) and to empannel a grand jury.— (10th chap. Penal Code, § 26.)

But it may be contended that the words " trial of criminal causes" in the 24th section, Clay's Dig. 293, means criminal causes where an indictment had been previously found, and that those words mean the trial of unfinished criminal causes.

A successful answer to this, I conceive, would be, that the power of trial presupposes and necessarily implies the power also of inquiry and accusation.—2 Hawk. Ch. 6, § 2; Dun v. State, 2 Pike 252 and 5; Friar v. State, 3 How. 422.

Admit that the Circuit Courts cannot, at their special terms, originate bills of indictment, it does not follow that the Criminal Court of Mobile is thus limited and restricted. The judicial power of the Circuit Courts over criminal causes is conferred by the constitution.—Art. V, § 1, 6 and 7. If there was no time fixed by statute for holding these courts, it would be discretionary with the judges, and they might hold these courts whenever they saw proper. But the time is regulated by statute (Clay's Dig. 288-9) and these courts can hold no other terms, except under particular circumstances prescribed and limited by law.— Clay's Dig. 293, § 24, 26, 27.

While thus holding special terms, they lose their character or power of courts of general jurisdiction, and become for the time, courts of special and limited jurisdiction, and every fact necessary to confer jurisdiction must affirmatively appear on their records.—Dun v. State, 2 Pike, *supra.*

Such is not the case with the Criminal Court of Mobile. There is no limitation or restriction of their jurisdiction at their terms of special adjournment.—See acts of '46, 29, § 3. It is altogether discretionary with the judge when he holds those other terms, provided they be holden by special adjournment from a regular term. This court has all the power at an adjourned term which it has at a regular term, and while so sitting retains its power as a court of general jurisdiction.—Friar v. State, 3 How. 422. It may be said that the words " despatch of business," limit them to unfinished business.

The word " despatch," when used as a verb, means, among other things, " to finish." But in the third section referred to, it is evidently used as a substantive, or noun, and when so used means "speedy performance, execution, transaction of business," &c.

The word " special" is not used in the third section of the act of 1846, establishing the Criminal Court of Mobile. It is used in the 24th section, Clay's Dig. 293, authorizing Circuit Courts to hold " special sessions."

Adjourned terms are not new terms, but a part of the regular term.—Com. v. Sessions of Norfolk, 5 Mass. 435 ; Mechanic's Bank v. Withers, 6 Wheaton 106.

The Circuit Courts have the power of jail delivery.—Clay's Dig. 294, § 30. So has the Criminal Court of Mobile. These

commissioners to deliver the jails have the power to originate business as well as to try those cases originated by other justices.—1 Chitty Cr. Law, 145-6; 2 Hawk. Ch. 6, § 2; 2 Hale 34. Under a commission of jail delivery the justices could try no one who was not either in actual or constructive custody.—1 Chitty 145; 2 Hawk. Ch. 6, § 5; 4 Black. 271.

COLEMAN, J.—The prisoner was convicted of the offence in this case at a special term of the City Court of Mobile. The bill of indictment was found by a grand jury organized at said term, and the question arises whether the court had the power to originate a criminal proceeding at said special term?

After a careful examination of all the statutes on the subject, we are satisfied that the court rightfully exercised jurisdiction in the matter.

By the third section of the act to establish a Criminal Court in the city of Mobile, it is enacted "that said court shall hold three terms in each year, commencing on the first Mondays in November, February and June, and may, by special adjournment, hold such other terms as may be necessary for despatch of business."

The fourth section of the act declares "that said court shall have concurrent jurisdiction with the Circuit Courts in the administration of the criminal law in said county."

By the act of 1807 it was enacted, that a special session of any Circuit Court may be held by order of the judge or judges of the same, whenever it may be necessary for the trial of criminal causes; and the act of 1819 declares that said judges shall have the power, on the application of any person charged with a criminal offence, to hold a special session for the trial of such person.

The twenty-sixth section of the tenth chapter of the Penal Code provides for the empannelling of a grand jury at any extra or special term of the Circuit Court.

From these statutes we think the jurisdiction of the court in the case is clearly deducible.

The objection that the record does not show affirmatively that the grand jury was drawn, summoned and empanneled according to the act, cannot be supported. It has been uniformly held by this court that if such objections could have availed the defen-

dant, they should have been pleaded in abatement.—The State v. Greenwood, 5 Por. 474; The State v. Pile & Pile, 5 Ala. 72; Shaw v. The State, 18 ib. 547.

The defendant moved the court below in arrest of judgment, on the ground of the insufficiency of the indictment. The part of the indictment objected to reads thus: " That John Nugent, late of said county, in and upon one Hannah Smith, (she, the said Hannah Smith, then and there being a female child under the age of ten years,) feloniously did make an assault, and her, the said Hannah Smith, then and there feloniously did abuse in the attempt *carnally know.*"

The indictment is founded on the seventeenth section, third chapter of the Penal Code, which is in these words: "Every person who shall carnally know, or abuse in the attempt to carnally know, any female child under the age of ten years, shall, on conviction, be punished by imprisonment in the Penitentiary for life." We think the indictment fails to give a full and sufficient description of the offence in omitting to specify the individual whom the defendant attempted to carnally know. The attempt carnally to know the infant constitutes the enormity of the offence, and the indictment ought certainly to state with legal precision and certainty, upon whom the attempt was made. The rule laid down in the standard works on criminal pleading as to the statements in an indictment, is, that all the ingredients of the offence with which the defendant is charged, the facts, circumstances and intent concerning it, must be set forth with certainty and precision.—Arch. Cr. Pl. 28; Chitty's Cr. Pl. 169. The rule is also without exception, that an indictment must be certain as to the person against whom the offence was committed. In indictments for offences against the persons or property of individuals, the christian name and surname of the party must be stated, if known, and if unknown, as in the case of the murder of a stranger, he must be described as a person unknown.—2 Hawk C. 25, § 71-2; 2 Hale 181; Arch. Cr. Pl. 45. The omission to state the name, or stating the wrong name, is fatal to the indictment. The Attorney General, however, does not controvert the law referred to, but contends that by a proper construction of the indictment, the words " carnally know" must refer to Hannah Smith. We are unable to reach that conclusion. Even if we supply the word *to* before the words " carnal,

ly know," in the indictment, by no rule of grammatical construc-tion or legal intendment, can we say they refer to Hannah Smith.

The judgment below is reversed, and the cause remanded, that a good indictment may be found.

DARGAN, C. J.—My own impressions, uninfluenced by the opinion of my brothers, would have led to an affirmance of the judgment, but as I cannot say that my mind is free from all doubt as to the sufficiency of the indictment, I yield to their opinion, and join in reversing the judgment.