# DEW ET AL. *vs.* CUNNINGHAM ET AL.

[ACTION UNDER CODE ON BOND—JUDGMENT BY DEFAULT.]

1. *Defective service of process not available on error.*—The sheriff's failure to serve a copy of the complaint with the summons is a mere irregularity, which, after judgment by default, is not available on error.

Dew et al. v. Cunningham et al.

2. *Constitutionality of Code.*—The constitutional provision (Art. III, § 23), that no bill shall have the force of a law until it be read on three several days in each house of the general assembly, does not require that everything which is to become a law by the adoption of the bill shall be thus read; nor does the provision (Art. III, § 1) prescribing the style of laws affect the validity of a body of laws, when the bill by which they were adopted pursued the prescribed form.

APPEAL from the Circuit Court of Pickens.
Tried before the Hon. GEO. D. SHORTRIDGE.

This suit was commenced on the 12th September, 1854. The return of the sheriff was in these words: "Executed the 23d September, 1854, by leaving a copy of this summons with each of the defendants." Judgment by default was rendered against the defendants, at the term to which the summons was returnable, on the 27th October, 1854; from which judgment they now appeal, and here assign the following errors: "1. The record does not show that the complaint was executed on the defendants, or a copy of it left with them. 2. The Code of Alabama, by virtue of which the proceedings in the record were had, was not made the law of Alabama in conformity with the constitution of the State."

ALEX. B. CLITHERALL, for the appellant:

1. The service of the summons alone is not sufficient to apprise the defendant of what he is called to answer, nor is it a compliance with the statute.—Code, § 2165.

2. As to the constitutionality of the Code: The constitution recognizes but one mode of enacting laws, namely, by "bill" introduced in either house. It further provides (Art. III, § 23) that "no bill shall have the force of a law until on three several days it be read in each house, and free discussion had thereon"; that "every bill, having passed, shall be signed by the speaker and president of the respective houses"; and (§ 1) that "the style of the laws shall be, 'Be it enacted by the senate and house of representatives of the State of Alabama, in general assembly convened." If, then, the constitution requires these acts to be done, does not the failure, or the refusal to do them, render the action of the legislature unconstitutional? The Code of Alabama is deficient in every

one of these constitutional pre-requisites. It was not introduced into either house as a bill. It was reported by the codifiers to the governor, and by him transmitted to each house. It was not received in either house as a bill; nor was it any time, by any action in either house, treated as a bill, or acted on as a bill. It was not read "in each house on three several days"; but, on the contrary, was not read once in either house. Nor was the reading dispensed with, as "in case of emergency", by a vote of four-fifths of either house: on the contrary, the house refused, by a deliberate and recorded vote of yeas 34, nays 44, to allow it to be read, upon the very ground that it was not a bill.—House Journal, 445. It has no enacting clause, or "style." It was not signed by the speaker and president of the respective houses. It was not approved by the executive, as required by the 16th section of the 4th article.

If the Code, then, be the law of Alabama, whence does it derive its vitality? From nothing but the act of February 5, 1852, which declares "that the code of laws prepared," &c., "is hereby received and adopted as the Code of Alabama." Can the legislature thus, "in short by consent," repeal the whole mass of existing laws, and substitute an entirely new system, not one clause of which has been enacted in conformity with the express requirements of the constitution? If it be said that the bill adopting the Code took a regular course, and was open to amendment, and that therefore the matter thus adopted was constitutionally adopted; the answer is, that there is no authority in the constitution for such a mode of legislation. No amendment of the bill adopting the Code could reach the Code itself. The journals show that this was often tried, and was always refused; and that the only alternative was, the Code or nothing. Had the Code been regarded as a bill, or as part and parcel of a bill, it was the right of any one member to insist on the reading, and it would have been open to amendment; but the journals show that the reading, though often called for, was refused, on the ground that the Code was not a bill, nor part and parcel of a bill; and that the reading "of the sections which embrace the most material changes in the existing laws" was likewise refused.—House Journal, 452.

If it be said that the question has been concluded by the adoption of Toulmin's, Aikin's, and Clay's Digests, the answer is, that those Digests were simply re-arrangements of existing statutes, and contain nothing as law which had not been previously regularly enacted. Not so with the Code: it is new matter *ab ovo*. Many statutes, and parts of statutes, unrepealed, are omitted from it; while many new provisions are inserted, and a new construction, in manner and matter, form and substance, given to the entire system. But, even if these Digests contained some alterations or modifications of the existing laws, made by the respective digesters, this would not cure a like defect in the Code. Such modifications or alterations were made without the warrant of the constitution, which cannot be amended or repealed by intendment; nor should its mandates be evaded by the easy method of declaring that certain requirements are merely directory.

LEWIS M. STONE, *contra*, made these points:

1. The service of process, as shown by the record, was sufficient.—Morton v. Bradley, 27 Ala. 640. But, if it were insufficient, the irregularity is not available on error.—Moore v. Fiquett, 19 Ala. 237; Roberts v. Beeson, 4 Porter, 167; Nabers v. Thomason, 1 Ala. 590; Mitchell v. Allen, 2 Stew. & P. 247.

2. The Code was adopted in pursuance of the 20th section of the 6th article of the constitution, which requires the legislature, within every ten years, to provide for a revision of the "body of our laws, civil and criminal," "in such manner as the general assembly may direct." The mode of adopting these revisions is discretionary with the legislature. At the session of 1849–50, an act was passed, providing for the appointment of commissioners to arrange and codify the public statutes of the States; and a supplementary act was passed, enlarging the powers of the commissioners. Under these acts, the Code was prepared, and reported to the ensuing session of the legislature; and at that session, an act was passed "for the adoption, printing, and distribution" of it. Whether it was ever introduced as a bill, or was read on three successive days in each house, or was discussed or amended in either house, makes no difference, since the legis-

lature had the right to determine the manner in which they would adopt it. Had it been altered, as it would have been if it had been read and discussed, its provisions would have been rendered contradictory and repugnant, and its value as a system of laws would have been destroyed. It was prepared by three of the ablest lawyers in the State, was approved by the governor, was referred to a special committee of both houses, was carefully examined by them, and its adoption as a whole recommended by them; and the bill reported by them, providing for its adoption and distribution, regularly passed through the course prescribed by the constitution.

WALKER, J.—Where there is no service of the process commencing a suit, it would be error in the circuit court to render judgment by default. If the service be merely irregular, the objection must be appropriately made in the court below, and can not be made for the first time in this court.— Moore v. Fiquott, 19 Ala. 237; Roberts v. Beeson, 4 Porter, 166; 3 Chitty's General Practice, 517–518; Maverick v. Duffee, 1 Ala. 433.

In this case, the service of the summons does not affirmatively appear from the sheriff's return to have been effected by a delivery of a copy of the complaint as well as the summons. Conceding that we must intend that the sheriff omitted to serve a copy of the complaint along with the summons, as the service of the summons itself was sufficient to bring the parties into court, we will regard that omission as a mere irregularity not fatal on error.

The judgment by default in this case was rendered at the return term of the process commencing the suit. This could only be authorized by the Code. It is contended by the learned counsel for the appellant, that the Code is unconstitutional, and that therefore the judgment by default was improperly rendered.

Three years have elapsed since the Code went into operation; and every judicial tribunal in the State, including this court, has been acting under it, and carrying out its provisions. This court has repeatedly rendered judgments, in matters of the highest importance, which have no sanction

whatever in the law, if the Code is unconstitutional. Some of the sections of the Code have been expressly held to be constitutional, which could not be the case, if the entire system were unconstitutional. These facts constitute a strong judicial authority against the position of the appellant's counsel, although it is not expressed in any direct decision upon the point.

It is argued, that the Code is not the law in this State, because, at the time of its adoption, it was not read upon three several days in each house of the general assembly. The constitutional provision is, that "no bill shall have the force of law, until on three several days it be read in each house, and free discussion had thereon."

The requirement of the constitution is, that every bill shall be read on three several days in both houses of the general assembly. We do not understand this to mean that every thing which is to become a law by the adoption of the bill must be read on three several days. Such a construction is not warranted by the language of the constitution. Our legislative annals afford many instances of the adoption by one comprehensive enactment of large masses of law, which were never read on three several days in both branches of the legislature. To this class of legislation belongs the statute, which provides for the punishment as at common law of misdemeanors for which no punishment is prescribed in our statutes. An act of this kind was adopted a great many years ago in this State, and has been continued in all subsequent legislation on the subject of the criminal law. It can not be supposed that the entire common law on the subject of misdemeanors, outside of the scope of our statutes prescribing punishment for offences, was ever read in the legislature at all. Nevertheless, this court has repeatedly recognized as binding in this State the common law which provides for the punishment of misdemeanors, for which no punishment was prescribed in our statutes. Aikin's Digest was by one statute "established" as the law; and all laws of a general and public nature, passed previous to a certain time, with the exception of laws relating to county boundaries, were repealed by the same statute. The force of law has been conceded by the people and every department of the government of this State to

Aikin's Digest. The effect given to Aikin's Digest by the courts was not simply that of affording evidence of what the law was, but of law itself. It has been held by this court to have effected the repeal of pre-existing law.

We do not think it could have been contemplated, in the adoption of the constitution, that every thing which becomes a law, as the result of the adoption of a bill, should be read on three several days in the legislature. It would exclude the power of making comprehensive enactments, which legislative bodies have always exercised, to so hold.

The first section of the third article of the constitution is as follows: "The legislative power of this State shall be vested in two distinct branches: the one to be styled the senate, the other the house of representatives, and both together the general assembly of the State of Alabama"; and the style of their laws shall be, "Be it enacted by the senate and house of representatives of the State of Alabama, in general assembly convened." It is contended, that the Code is not the law, because it has not the style prescribed. Conceding, for the sake of the argument, that the adoption of the style is necessary to the validity of an act of the legislature, it will not aid the appellants. The bill adopting the Code is preceded by the words designating the style of the laws, and that is sufficient. It would be impracticable to make the style precede every law called into force by act of the legislature. The style which heads the bill adopting the Code, may well be regarded as the style of the laws embraced in it.

The judgment of the court below is affirmed.