# Hoover *v.* The State.

## *Living in Adultery or Fornication.*

1. *Intermarriage of white and black persons forbidden —*The marriage of a white woman and a black man is absolutely void ; and the offending parties must be treated as unmarried persons, and their sexual cohabitation as fornication, within the statute.

2. *The Penal Code was constitutionally enacted.*—Section 4189 of the Code was taken from the Revised Code of 1867; thither it was carried from the Penal Code of 1866; and the enactment of the statute " to establish a new Penal Code " was a constitutional enactment of all the provisions contained therein.

3. *Advice of probate judge inadmissible as evidence.*—The court did not err in refusing to receive testimony that, before the alleged marriage, the probate judge informed the defendant it was lawful for him to marry a white woman.

4: *An unlawful act, intentionally done, is a crime.*—To constitute a crime, there must be both an intent and an act; if the act is intentionally done, the criminality necessarily follows.

APPEAL from the Circuit Court of Talladega.
Tried before the Hon. JOHN HENDERSON.

[Hoover v. The State.]

The grand jury of Talladega county presented the follow-- ing indictment:

" The State of Alabama, Talladega county.   Circuit Courr, fall term, 1876.   The grand jury of said county charge that, before the finding of this indictment, Robert Hoover, a negro man, and Betsey Litsey, *alias* Elizabeth Litsey, a white woman, did live together in a state of adultery or for- nication, against the peace and dignity of the State of Ala- bama."

The defendant, Betsey Litsey, was not put upon her trial.

The defendant, Robert Hoover, pleaded to the indictment, " not guilty," and " the special plea of marriage duly and legally entered into before the finding of the indictment."

The defendant, Hoover, a negro man, and the defendant, Betsey Litsey, a white woman, lived together openly, " in a house containing only one room, at ' Needmore,' a suburb of the town of Talladega, during the year 1876, and afterwards they lived together at the ' Tom Curry 'place,' distant from Talladega three or four miles.   They represented themselves to be married, and recognized each other as husband and wife.   It was admitted that Betsey Litsey and Sarah Eliza- beth Smith are one and the same person.   The State intro- duced the following :

" The State of  Alabama, Talladega County.   To any ordained or licensed minister, judge of the Circuit or Probate Court, or justice of the peace of said county, greeting : You are hereby authorized to celebrate the rites of matrimony between Robert Hoover and Sarah Elizabeth Smith, and this shall be your sufficient authority for so doing.   Given under my hand and seal, this sixth day of March, 1875.

" GEORGE P. PLOWMAN, P. S.,

" Judge of Probate."

Under the signature of the judge of probate were written these words :

" The above named parties were married by me, at George Isbell's, on the sixth day of March, A. D. 1875.

" JOHN LIVINGSTON."

The defendant offered to prove, by the judge of probate, that, before the  marriage license was issued, the defendant asked him if it was lawful for him (Hoover) to marry a white woman, and that he was informed that it was.   The judge of probate also told him that, the Supreme Court had decided the law forbidding such marriages to be unconstitu- tional.   The State objected to this evidence ; the court sus- tained the objection, and the defendant excepted.

[Hoover v. The State.]

The court, among other things, charged the jury, "that the marriage shown in this case was forbidden by law, is a nullity, and is no protection to the parties who are guilty as charged in the indictment, if the evidence shows, beyond a reasonable doubt, that Hoover is a negro man and Litsey a white woman, and that they have been cohabiting as husband and wife, in Talladega county, within three years before the finding of this indictment." To this charge the defendant excepted, and then asked the court to give the following charges, which were in writing: "*First*, if the jury believe the evidence, they must acquit the defendant; *second*, if the jury believe, from the evidence, that the defendant was married to Betsey Litsey, by a minister of the gospel, on the sixth day of March, 1875, under and by virtue of a marriage license issued out of the Probate Court of Talladega county, they cannot find him guilty; *third*, the theory of the law is, that a criminal intent is a necessary ingredient in every crime; *fourth*, the intent with which the man lived with the woman, Litsey, must have been criminal, or the jury cannot convict; and they may look to their manner of living and to their marriage record in determining their intent."

The court refused to give each charge, and to the refusal of each the defendant separately excepted.

GEORGE W. PARSONS, for the appellant.—1. There never was a statute of Alabama forbidding marriage between whites and negroes, and declaring it to be void *ab initio;* but only a statute (§ 4189 Code, 1876), declaring that if any white person and any negro . . . . intermarry . . . . each of them must, on conviction, be imprisoned in the penitentiary, &c.

2. Section 4189, *supra*, which prescribes a punishment for such marriages, the same being section 3602 of the Revised Code, and section 61, Penal Code, 1866, though on the statute book since February, 1866, was never passed by any legislature of Alabama, consequently never was, and is not now a valid law.—*Jones v. Hutchinson*, 43 Ala. 721; *Dane v. McArthur.*

3. If the foregoing propositions be incorrect, the defendant is not criminally liable, because he was married in March, 1875, nearly three years after the decision of *Burns v. The State* (48 Ala. 195), declaring section 4189, *supra*, to be unconstitutional, null and void.

4. If section 4189 has been of force, notwithstanding the decision in *Burns v. The State*, still the defendant is not guilty as charged in the indictment.

[Hoover v. The State.]

JOHN W. A. SANFORD, Attorney-General, *contra.*—Cited ·case of *Green v. The State*—and authorities therein quoted— at present term.

STONE, J.—In *Green v. The State*, at the present term, we entered into an elaborate discussion of section 4189 of the Code of 1876, which prohibits, under severe penalties, intermarriage and living in adultery or fornication between white and colored persons, and declares such marriages void. We are satisfied with the arguments then used, sustained, as ·the opinion was, by the highest authority, and will not repeat or review it here. The marriage being absolutely void, the ·offending parties must be treated as unmarried persons, and their sexual cohabitation as fornication within the statute.

The act "to establish a new penal code," Pamph. Acts 121, approved February 23, 1866, contains the section which is now 4189 of the Code of 1876. That section was carried ·into the Code of 1867 as section 3602. It was approved in the adoption of each of the Codes of 1867 and 1876. The enactment of the statute "to establish a new penal code," was a constitutional enactment of all the provisions contained therein.—*Dew v. Cunningham*, 28 Ala. 466.

The Circuit Court did not err in refusing to receive testimony that, before the alleged marriage, the probate judge ·counselled the defendant it was lawful for him to marry a white woman. The maxim, *ignorantia legis, neminem excu-·sat*, is a stern, but inflexible and necessary rule of law, that has no exceptions in judicial administration, and the former erroneous ruling of this court furnishes no excuse which we can recognize.—*Boyd v. The State*, December term, 1876; S. C. 4 Otto, 645.

It is very true that to constitute a crime, there must be both an act and an intent. But, in such a case as this, it is enough if the act be knowingly and intentionally committed. The law makes the act the offence, and does not go farther, and require proof that the offenders intended, by the prohibited act, to violate the law. The act being intentionally done, the criminality necessarily follows.

There is no error in the record, but we consider this a case for executive clemency, on condition there be given satisfactory assurance of a discontinuance of this very gross offence ·against morals and decorum. Should the crime be repeated or continued, the law should lay a heavy restraining hand on the offenders.

Affirmed.