# Bales *v.* The State.

## *Indictment for Murder.*

1. *Special terms of court; validity of indictment and trial at.*—Under the statute (Code, §§ 652–3), a circuit judge has power to convene a special term of the court, in any county in his circuit, whenever, in his opinion, a special term is necessary; the jurisdiction and authority of the court at a special term, convened in pursuance of the statute, are as plenary as at a regular term; an indictment, found by a grand jury organized at such special term, is valid, and a trial and conviction under it are neither illegal nor irregular.

2. *Statutes in Code, not originally conforming to constitutional rules as to revising and amending laws.*—The Code of 1876, purporting to embrace all public statutes, of a general and permanent nature, of force at the time of its adoption, was enacted in conformity to the provisions of the constitution; and any statute therein included, though not originally conforming to the rules prescribed by the constitution as to revising and amending laws, became valid from the day the Code went into operation.

3. *Objections to array of grand jury.*—The statutory provisions regulating the drawing and summoning of persons to serve as grand jurors, are expressly declared to be directory. (Code, § 4759); and any departure from them, which works no injury to the accused, is no ground of objection to the whole array.

4. *Competency of petit juror, as affected by opinion as to guilt or innocence of accused.*—Under the statute (Code, §§ 4881–82), as at common law, it is good ground of challenge for cause, that the proposed juror has a fixed opinion as to the guilt or innocence of the accused, which would bias his verdict. But, at common law, this might be made a collateral issue, and proved or disproved by other evidence than the oath of the person proposed as a juror; while the statute submits the inquiry to the sworn conscience of the juror himself, and from his testimony alone the court must determine whether he is competent. Yet, if a person having a disqualifying opinion as to the guilt of the accused should procure acceptance as a juror, whether through design or ignorance on his part, a verdict of guilty, in which he participated, would be set aside by the court, on motion for a new trial, supported by proper evidence.

5. *Same.*—The "fixed opinion as to the guilt or innocence of the defendant," and render the person incompetent as a juror, must be such as would prevent him from rendering a verdict in accordance with the evidence as disclosed on the trial, and the law as pronounced by the court: an opinion founded merely on rumor, or formed on the hypothesis of the truth of the facts which he has heard, and without the hearing of other facts which may contradict them, or lessen their weight, does not disqualify him.

6. *Same.*—A person who says that, "from what he had heard, he had an opinion that the prisoner had killed some one, but none whether the killing was justifiable or not," is not incompetent as a juror; nor a person who says that he "can't help believing what he has heard."

7. *Same; examination of proposed juror.*—After the court has examined a proposed juror, it is not error to refuse to allow the prisoner's counsel to ex-

[Bales v. The State.]

amine him, for the purpose of ascertaining whether he is not subject to challenge for cause.

8. *Standard medical treatises as evidence.*—The principle is settled by former decisions of this court, that standard medical books, in connection with proper explanation, when necessary, of the terms used, may be read to the jury as evidence in a criminal case.

FROM the Circuit Court of Limestone.

Tried before the Hon. W. B. WOOD.

The prisoner in this case, John H. Bales (or Bailes), was indicted for the murder of his wife, Mary Alice Bailes, in May, 1879, by shooting her with a pistol. The indictment was found at a special term of said Circuit Court, held on the third Monday in July, 1879; and the trial was had at the same term. The special term was held in pursuance of an order made by Hon. W. B. WOOD, the judge of the fourth judicial circuit, on the 4th June, 1879, which is copied in the transcript, and in which it is recited that a special term is ordered by the judge, "being of opinion that a special term of said court is necessary for the disposal of such criminal business as may be brought before it." The order directed the proper officers to draw and summon grand and petit jurors for the special term, and that the order itself should be published in the *Athens Post*, a newspaper published in Limestone county, for thirty days before the commencement of the special term. The minute-entry recites that the special term was held in pursuance of the order, and that the order had been published in accordance with its own requirement. The *venire* of persons summoned as grand jurors, eighteen in number, is set out; all of whom appeared, and, three being excused by the court, the remaining fifteen were organized as the grand jury, and returned the indictment into court on the 21st July. Fifty persons were also summoned as petit jurors; but this *venire* being quashed, on motion of the prisoner, one hundred persons were ordered to be summoned as jurors, a list of whom, with a copy of the indictment, was served on the prisoner, under the order of the court, one day before the day appointed for his trial.

Being duly arraigned, the prisoner demurred to the indictment, and moved to quash it, and filed several pleas in abatement; insisting that the court had no power or jurisdiction, at said special term, either to institute proceedings against him, or to try him, and that the indictment was void. The court overruled the demurrer and the motion to quash, and sustained demurrers to the pleas in abatement. The prisoner also moved to quash the *venire* of petit jurors, because two of the names therein mentioned were not in the list served on him; but the court ordered these two names to be

discarded, and overruled the motion. The prisoner also challenged the array of petit jurors, because forty-eight persons were summoned as regular jurors, instead of thirty (Code, § 4738); but the court overruled the challenge, and the prisoner excepted. Issue being joined on the plea of not guilty, the trial then proceeded.

The name of J. H. Allison being drawn as a juror, he was examined by the court touching his qualifications; and having stated, among other things, that " he has no fixed opinion as to the guilt or innocence of the defendant, which would bias his verdict," and being declared a competent juror by the court, he was accepted by the State. "Being asked by the prisoner, if he had not formed an opinion as to his guilt or innocence, said Allison answered, that, 'from what he had heard, he believed defendant was guilty of murder, but did not know that this would bias his judgment.' The prisoner then challenged said Allison for cause as a juror, but the court overruled and refused to allow said challenge; to which the prisoner duly excepted, and then challenged said Allison peremptorily."

The name of E. W. Higgins being drawn by the clerk, " said Higgins was duly sworn, and examined by the court; and the same questions being asked him, and like answers returned, as in the case of said Allison, he was pronounced a competent juror, and was accepted by the State; and then, in answer to questions by the prisoner, he said, that he had not talked with the prosecutor about this case, but has now an opinion, formed from rumor, as to the guilt of the prisoner." The prisoner thereupon challenged said Higgins for cause, but the court overruled and refused to allow the challenge; to which the prisoner excepted, and then challenged said Higgins peremptorily.

The name of A. W. Stroud being drawn by the clerk, said Stroud was sworn and examined by the court; and being pronounced competent as a juror, he was accepted by the State. " The prisoner then asked said Stroud, if he has formed an opinion as to his guilt or innocence; and said Stroud answered, 'I can't help believing what I have heard.' The prisoner then challenged said Stroud for that cause, but the court refused to allow said challenge for cause; and thereupon the prisoner duly excepted to this ruling, and challenged said Stroud peremptorily."

The name of A. W. Eaton being drawn, he was duly sworn and examined by the court; and being pronounced competent as a juror, he was accepted by the State. "In answer to questions then put by the prisoner, said Eaton stated that, from conversations with our best citizens, in whom he had

every confidence, he had formed the opinion that the prisoner had killed some one, but none as to whether he was justifiable or not; that he now has that opinion—namely, that he killed some one—but this might be removed by evidence; that it would require some evidence to remove that opinion, but that this belief would not bias his verdict. Thereupon the prisoner challenged said Eaton for cause, and, said challenge being overruled and refused by the court (to which the prisoner duly excepted), he also challenged said Eaton peremptorily."

The name of one Lemuel Smith being drawn, he was sworn and examined by the court; and being declared by the court to be a competent juror, he was accepted by the State. "The prisoner then proposed to ask said Lemuel Smith, for the purpose of ascertaining a ground of challenge for cause, if he was born in the United States, or had ever been duly naturalized; also, if he had been a freeholder or householder for the last twelve months, and if he owned any legal or equitable interest in any lands. The court refused to permit any or either of said questions to be put to said Smith, as grounds of challenge for cause, he having been declared competent by the court, and accepted by the State; but allowed the prisoner to ask any and all such questions to ascertain grounds for acceptance or peremptory challenge, and required the prisoner to accept said Smith or to challenge him peremptorily; to which ruling and action of the court the prisoner duly excepted, and then challenged said Smith peremptorily." Similar rulings were made, and exceptions duly reserved, as to John S. Tucker and E. S. Strange, each of whom was also challenged peremptorily by the prisoner.

The defense of insanity was interposed by the prisoner, and evidence was introduced in support of it; and in this connection, the prisoner's counsel proposed to read to the jury, as evidence, extracts from *Taylor's Medical Jurisprudence*, *Beck's Elements of Medical Jurisprudence*, and *Ray's Medical Jurisprudence of Insanity*, which were proved to be standard medical treatises, and recognized as such by the medical profession. The court rejected this evidence, and the prisoner excepted to its exclusion.

Several other exceptions were reserved by the prisoner, which, under the opinion of this court, require no particular notice.

E. T. TALIAFERRO, JOS. B. MCDONALD, J. J. TURRENTINE, and JAMES BENAGH, for the prisoner.

H. C. Tompkins, Attorney-General, for the State.

BRICKELL, C. J.—By the statute (Code of 1876, §§ 652-3), which is shown by the record to have been strictly pursued, a judge of the Circuit Court has full power to convene " a special term, in any county in his circuit,.whenever, in his opinion, a special term is necessary." The exercise of the power rests wholly in the discretion of the judge, and his conviction of the necessity for the term. The statute provides further, that, " at· such special term, the judge shall have the same power, jurisdiction, and authority to organize a grand jury, and to try and dispose of all causes, both civil and criminal, that may come before the court, and to do and perform all the business of such court, as at a regular term." The jurisdiction and authority of the court at a special term, convened in pursuance of the statute, is as plenary as at a regular term ; and an ·indictment found by a grand jury, organized at such term, is valid ; and a trial, and judgment of conviction, are not illegal, nor irregular.—*Nugent v. The State*, 19 Ala. 540 ; *Harrington v. The State*, 36 Ala. 236 ; *Aaron & Ely v. The State*, 39 Ala. 684.

2. Whether the mode of legislative procedure, prescribed by the last clause of the second section of the fourth article of the constitution of 1868, was observed in the original enactment of this ˙statute, is not a question of any importance in this cause. It was introduced into, and forms part of the present Code, which, in all its parts and provisions, was enacted in conformity to the constitution, and embodies all public statutes, of a general and permanent nature, of force in the State.—*Dew v. Cunningham*, 28 Ala. 466 ; *Hoover v. The State*, 59 Ala. 57. It may embrace statutes not originally enacted in the forms prescribed by the constitution ; and if that be true, they are valid, not from the day of their original enactment, but from the day the Code became operative.

3. The special term being held " for the disposal of such criminal business as may be brought before it, " following the words of the order convening it, and the trial of the accused, charged with an offense which could be punished capitally, being a part, if not the exclusive business it was contemplated would come before the court, the statute required that fifty persons should be drawn to serve as petit jurors ; and in the drawing shown in the record, it was observed.—Code of 1876, § 4739. Besides, the statutory provisions are expressly declared to be directory ; and a departure from them, which works no injury to a party accused of

a criminal offense, can not be made the ground of objection to the whole array.—Code of 1876, § 4759.

4. The Bill of Rights declares: " That the right of trial by jury shall remain inviolate;" and guarantees to the accused, "in all prosecutions by indictment, a speedy public trial, by an impartial jury of the county or district in which the offense was committed;" and further, that he shall not "be deprived of his life, liberty, or property, but by due process of law." Impartiality is the highest, most indispensable qualification of a judge, or of a juror—freedom from bias, prejudice, passion, or interest. Impartiality, independence, in each individual juror, who is to sit in judgment upon the life, liberty, or property of his peer, so far as it may be expected from men having common interests, hopes, and fears, it is the purpose of all our legislation to secure. Before administering the oath to any person summoned and appearing as a grand or a petit juror, it is the *imperative* duty of the court to ascertain whether he is competent to discharge the duties with honesty, impartiality, and intelligence, and is esteemed in the community for integrity, fair character, and sound judgment.—Code of 1876, § 4760. And the officers charged with the duty of drawing and selecting jurors, are commanded not to select any other persons, than such as, in their opinion, are of these qualifications.—Code of 1876, § 4733.

The statute enumerates seven grounds, which are the subject of a challenge for cause, by either the State, or the accused; and two, which are grounds of such challenge by the State only. These two—a fixed opinion against capital or penitentiary punishment, and that a conviction should not be had on circumstantial evidence—are favorable to the accused, and of prejudice only to the State.—Code of 1876, §§ 4881-83. It is the usual practice, and was pursued in this case, for the court to examine, or cause each person, as he is drawn as a juror, to be examined on his *voir dire*, to ascertain if he is subject to any of these grounds of challenge. On the examination, four persons were challenged by the accused, because each disclosed, as it was supposed, that he *had a fixed opinion as to the guilt or innocence of the accused;* in other words, that he was not impartial—was not free from bias and prejudice against the accused. This ground of challenge, under the statute, is provable alone by the oath of the juror.

The common law jealously excluded from the jury-box all who had prejudged the particular cause—all who, by passion, or prejudice, or bias, from whatever cause it proceeded, had disqualified themselves from passing upon it impartially.

It is the common-law principle which the statute was intended to embody, expressed in phraseology the legislature deemed the most intelligible and most comprehensive. If it would be competent for the legislature to narrow the principle of the common law, and introduce into the jury-box the man of prejudice—the judge in advance of a hearing, and of deliberation after hearing—that purpose is not indicated in the statute. The disqualification at common law, and under the statute, is, that the person proposed as a juror holds an opinion, as to the guilt, or as to the innocence of the accused, disqualifying him from rendering a verdict in accordance with the evidence as it may be delivered by the witness, and the law as it may be pronounced by the court. The holding of such an *opinion*, such a *judgment*, or *belief*, all authorities at common law concurred in pronouncing sufficient to compel his exclusion, whatever diversity of opinion there may have been as to the mode of ascertaining, or as to the facts which showed its existence.

This cause of challenge could, at common law, become a collateral issue, submitted to triers summoned for that purpose ; and it was the matter of proof or disproof, by other evidence than the testimony of the proposed juror. Under the statute, it can not be proved or disproved, otherwise than by his oath ; and the court, without the intervention of triers, determines its existence. Yet, there can be no doubt, if a juror, having a disqualifying opinion, should introduce himself into the jury-box, by concealing, or by failing to disclose it from mere ignorance, a conviction by a verdict in which he participated would be set aside, on an application for a new trial, supported by proper evidence. The whole purpose of the statute is to simplify the inquiry into the existence of this cause of challenge, and to avoid the many objections to jurors, sometimes narrow, too often interposed at common law, embarrassing, rather than promoting a fair, just, impartial administration of the criminal law.—*Carson v. The State*, 50 Ala. 134. The inquiry is submitted to the sworn conscience of the proposed juror ; and from his testimony it must be determined whether he is, or is not, subject to this disqualification. Propounded in the formula of the statute, a positive, direct answer is not often, in practice, obtained to the inquiry. If it is, and is affirmative, the juror is generally excluded, without further inquiry ; and properly so, for it would be unsafe to introduce him into the jury-box, if that is his own conviction as to the state of his mind, though, after explanations proceeding from the court, or made in its presence and with its sanction, he should declare that he has no fixed opinion, which would bias his verdict.

[Bales v. The State.]

While the administration of the statute must not encourage objections, because the person proposed may entertain hypothetical opinions, care must be taken that none but good and true men, free from an opinion which would bias their verdict, are introduced as jurors.

5. The juror Allison declared, that he had not a fixed opinion as to the guilt or innocence of the accused, which would bias his verdict. Upon interrogation by the counsel for the prisoner, he stated that, from what he had heard, he believed the prisoner was guilty of murder, but did not know that this would bias his judgment. Crime can not be committed without attracting the attention of the community, to a greater or less degree, in the locality of its commission. The greater the crime, the greater is the degree of attention. Such a crime as that imputed to the prisoner, will shock the moral sense, and arouse the indignation of any civilized community; and if there be any who do not hear of it, and the circumstances narrated as attending its commission, they are generally the obscurest and least intelligent of the community. If all who hear of it, and form an opinion from the circumstances as they become notorious, are excluded, it would be almost an impossibility to obtain a jury for the trial of the person charged, in the district or county in which the offense was committed. Such opinions, formed on the hypothesis of the truth of the facts which have been heard, and without the hearing of other facts which may contradict them, or lessen their weight, is not the fixed opinion, to which the statute refers; nor was it a disqualification, according to the better authorities, at common law. There was no error in overruling the challenge of Allison. Nor was there any error in overruling the challenge of Higgins, whose opinion was founded merely on rumor.—*Epes' case*, 5 Gratt. 674; *Armstead's case*, 11 Leign, 657; *The State v. Morea*, 2 Ala. 275; *Williams v. The State*, 3 Stew. 454.

6. The juror Eaton, who, from what he had heard, had an opinion, that the prisoner had killed some one, but none whether the killing was or not justifiable, was not disqualified.—Whart. Cr. Law, § 2989. Nor was it disclosed that Stroud was an incompetent juror. The examination proceeded no further, than to draw from him the declaration, that "I can't help believing what I have heard." What he had heard, whether it had induced a fixed opinion of the guilt or of the innocence of the prisoner, did not appear. If it was of the innocence of the prisoner, it would not have been, at his instance, a challenge for cause. Enough was not shown to indicate that he had a fixed opinion of the guilt

of the prisoner, and that alone could have supported the challenge he made.

7. The proposed examination of Smith, Tucker and Strange, to ascertain whether they were subject to challenge for cause, after they had been examined by the court, was properly refused. We know of no authority, and we perceive no reason for any such speculative, inquisitorial practice, consuming needlessly the time of the court, and offensive to the persons subjected to it. The rule is ancient, that neither party has a right to interrogate a juror before he is challenged.—1 Chitty's Cr. Law, 543–44; *King v. Edmonds,* 4 Barn. & Ald. 671.

8. In *Stoudenmeier v. Williamson,* 29 Ala. 558, this court held, that standard medical books, in connection with proper explanation of the terms used, if such explanation was necessary, could be read in evidence to the jury. The decision was followed in *Merkle v. The State,* 37 Ala. 139. The rule is consequently established here, and since these decisions, we presume, has been of frequent use in the primary courts. The Circuit Court was, consequently, in error, in rejecting as evidence the extracts from the books, which were shown to be of high authority in the medical profession.

We do not deem it necessary to consider the other questions raised upon the record. The error pointed out compels a reversal of the judgment, and the cause will be remanded. Let the prisoner remain in custody, until discharged by due course of law.