EDWARD CLIFFORD, PLAINTIFF IN ERROR, v. THE STATE OF NEW JERSEY, DEFENDANT IN ERROR.

1. When, upon a writ of error in a criminal case, the plaintiff in error procures to be returned the "entire record of the proceedings," as permitted by the supplement to the Criminal Procedure act, approved

May 9th, 1894 (*Gen. Stat., p.* 1154, § 170)—*Quære.* Whether the re-
viewing court should reverse for an error, which, if all the proceedings
were not before it, the court would pronounce capable of prejudicing
the accused in maintaining his defence on the merits, but which is
shown by the proceedings before it not to have had any prejudicial
effect.

2.   When a juror was called to the book, counsel for the accused proposed
to ask him certain questions and stated that his purpose was to elicit
information, so that the right of peremptory challenge might be intelli-
gently used.   No challenge had been interposed and it was not pro-
posed to swear the juror as upon challenge made.   *Held,* that the trial
court rightly refused to permit the juror to be thus interrogated.

On error to the Supreme Court.   For opinion of the
Supreme Court, see 31 *Vroom* 287.

For the plaintiff in error, *William T. Hoffman* and *Allan
L. McDermott.*

For the state, *Charles H. Winfield,* prosecutor of the pleas.

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.   This writ of error brings before
us the judgment of the Supreme Court affirming the con-
viction of plaintiff in error, in the Hudson County Oyer and
Terminer, of the crime of murder in the first degree.

Plaintiff in error has caused to be returned with the writ
what the judges of the Oyer and Terminer certify to be the
entire record of the proceedings had upon his trial.   There-
upon, and notwithstanding that counsel for plaintiff in error
have not urged it in their argument, this court deems itself
compelled by the legislative mandate contained in the supple-
ment to the Criminal Procedure act, approved May 9th,
1894 (*Gen. Stat., p.* 1154, § 170), to consider and adjudge
whether it appears therefrom that plaintiff in error suffered
manifest wrong or injury, whether by rejection of testimony
or in the charge made to the jury or in the denial by the
Oyer of any matter which was matter of discretion or upon
the evidence adduced at the trial.   Since the adjudication
which the legislature thus requires this court to make when-

ever a convicted criminal presents us with such a return, in this case involves momentous consequences to the plaintiff in error, we have given it the consideration which its importance to him and to the public requires.

The result of this consideration has been the conviction, on the part of every member of the court, that plaintiff in error suffered no wrong or injury whatever in any of the respects included in the act of May 9th, 1894, and that the verdict finding him to have been guilty of the crime of murder in the first degree was the only verdict which could have been properly rendered.

Counsel for plaintiff in error have, however, urged upon our consideration various alleged errors, assigned by them upon the admission or rejection of testimony at the trial and upon the charge of the court.

A question of grave importance is thereby suggested. Before the adoption of the supplement to the Criminal Procedure act above referred to, a court reviewing by writ of error a conviction in a criminal case was limited to the consideration of errors pointed out by proper assignments either in the record or in such occurrences at the trial as were disclosed by bills of exceptions allowed by the trial court. Nor were all such errors, even if obvious, to be made the ground of a reversal of a criminal judgment, for, since the passage of the supplement to the act entitled "An act regulating proceedings and trials in criminal cases," approved April 16th, 1846 (the supplement having been approved April 3d, 1855—*Pamph. L., p.* 648), the reviewing court was expressly prohibited from reversing a judgment of this sort for any error except such as had or might have prejudiced the accused in maintaining his defence on the merits. The pertinent section of the supplement of 1855 has remained in force and is now section 89 of the Criminal Procedure act. *Gen. Stat., p.* 1138.

It is unnecessary to refer to the numerous cases in which, under this legislation, reviewing courts have declined to interfere with criminal convictions for errors which had not prejudiced and could not have prejudiced the accused in his defence on the merits.

But it is obvious that in some cases in which an error had occurred which might have been of prejudicial effect to the defence on the merits, it was not in the power of the court of review to determine whether or not such prejudicial effect had been produced because the whole case was not before it but only the case disclosed in the record and in the bills of exceptions.

By the provisions of the supplement of May 9th, 1894, before recited, our Criminal Procedure act is so amended that a person convicted of a crime may by writ of error bring before the reviewing court the whole proceedings at the trial. When he does so, the question at once arises whether it is to be deemed the legislative intent that he may avail himself of errors which might have been prejudicial to a meritorious defence if the reviewing court, on considering the whole proceedings, finds that such error cannot have been thus prejudicial.

It would seem to border on the absurd to suppose that it was intended that a reviewing court, upon which is now cast the grave duty of adjudging upon the whole proceedings, were yet to be bound to reverse for an error which, if the whole proceedings were not before it, might be considered to have been prejudicial to a meritorious defence, but which, when the whole proceedings are considered, is discovered to be incapable of producing such a result.

This question was not presented by counsel for the state nor argued and will not, therefore, be determined. It is mentioned solely to avoid appearing to decide it by proceeding to consider the matters presented by the bills of exception and pressed in argument.

Among the matters presented by the arguments of counsel for plaintiff in error, one is to be noticed which does not seem to have been presented to the Supreme Court. It arises upon an exception allowed under the following circumstances : When a juror was called, counsel for the accused proposed to put to him the following questions, viz. :

" Were you acquainted with Mr. Watson, the deceased ?

"Are you acquainted with the officers of the West Shore railroad, or any of them ?

"Have you any personal or business relations with the West Shore railroad, or with any officer or employe thereof? "Are you employed by any railroad company in this state?"

At the time this course of procedure was proposed the indictment had disclosed that the prisoner was charged with the murder of William C. Watson. It did not then but did afterward appear that Mr. Watson, at the time of his killing, was a division superintendent of the West Shore Railroad Company. When counsel proposed to propound these questions to the juror, no challenge of any kind had been interposed and counsel stated the purpose of the questions to be, to elicit information for counsel "so that the right of exercising a peremptory challenge may be intelligently used."

As the juror was not put under oath, and it was not proposed to put him under oath, the proposition was to permit counsel to engage in open and audible conversation with the juror, a conversation over which, as there was no challenge or issue to be tried, the court would seem to have no control.

The trial court refused to permit the questions to be propounded to the juror, and thereupon exception was taken and allowed to such refusal.

The refusal thus complained of was in our judgment in accord with ancient and inveterate practice, never departed from, so far as we have observed, when objection was interposed. As long ago as 1824 one Zellers was tried before the Hunterdon Oyer upon an indictment for murder, and the case was considered of sufficient importance to justify a report of it to be published in 2 *Halst.* 220. It therefrom appears that one of the defendant's counsel asked a juror if he had not made up and expressed an opinion as to the guilt of the prisoner. Chief Justice Kirkpatrick interposed and said, "You cannot ask that question. If you mean to make a challenge you must do it in regular form and then prove it in regular form. What a man says, not under oath, cannot be received in any form." Another of defendant's counsel then suggested that the practice of thus interrogating jurors had been repeatedly followed, and the Chief Justice replied, "It is true we

have slipped into the practice, but on looking into it I am satisfied it is not the true way; the only proper way is to make the challenge and then prove it on oath."

It will be observed that in the Zellers case the question proposed to be put to the juror was obviously designed to elicit information upon which a challenge for cause could be interposed. While the juror, upon such a challenge, could not then have been compelled to answer such a question, upon the ground that an answer in the affirmative would have tended to his disgrace, as was afterward held in *State* v. *Spencer*, 1 *Zab.* 196, yet doubtless the admission of the juror that he had formed and expressed an opinion that the accused was guilty could have been given in evidence upon such a challenge. The proof of the mere formation and expression of such an opinion would not have been sufficient to support such a challenge, as was afterward held in *State* v. *Fox*, 1 *Dutcher* 566, but it was a necessary step in the necessary proof. The purpose of the question in the Zellers case was, therefore, analogous to the avowed purpose of counsel in the case under review, viz., to elicit information on which counsel might interpose a challenge.

Mr. Linn, in his note to the Zellers case contained in the reprint of Halsted's reports, has collected a number of cases by which the practice adopted by Chief Justice Kirkpatrick is supported.

From·that time to this we think the practice has been invariable whenever an objection has been interposed or the court's attention has been called to the matter.

The practice followed by the trial court is approved of and followed elsewhere. *Whart. Cr. L.,* § 3026; *Rap. Cr. Pro.,* § *a,* and cases in notes; *King* v. *State*, 5 *How.* (*Miss.*) 730; *Bales* v. *State*, 63 *Ala.* 30; *State* v. *Creasman*, 10 *Ired. L.* 395.

The argument of counsel for plaintiff in error, that such questions as he proposed to put to each juror were essential to the protection of the accused, by reason of the fact that not otherwise could information be obtained on which he could intelligently exercise the right of peremptory challenge, cannot prevail.

*32 Vroom.*     Clifford v. State.

The accused has the benefit of the knowledge of what jurors have been called to serve at the term, and is then served with the panel out of which the jurors who are to sit in his case are to be selected.   His counsel are thus afforded every opportunity to inquire in respect to the jurors and gain the information which they require in order to intelligently act in making peremptory challenges.

I think it would be impossible to exaggerate the evil consequences which would follow the adoption of the contrary practice.   If the court is bound to permit counsel to engage in a public conversation with each juror, for the purpose of enabling counsel to determine whether he should interpose a challenge or not, what control has the court over the examination ?   Where can it draw the line between proper and improper questions, when the purpose of the talk is not to prove a fact or to establish a challenge, but only to furnish counsel information?   How is a juror to be protected against improper questions, except by his refusal to answer them ?   And if he refuses to answer proper questions, what power has the court to compel him to answer?   Or, if a juror is anxious to escape service, how can it be discovered whether his answers, not given under the sanctity of an oath, are true or false?   Such a practice would introduce into this state, happily so far free from them, the unseemly, vexatious and expensive delays in impaneling juries in criminal cases which have been a reproach to the administration of criminal justice in some other states.

The other assignments of error relied on and urged before us, were all considered by the Supreme Court, whose conclusions thereon are entirely satisfactory to us.

The judgment must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, COLLINS, DIXON, GARRISON, GUMMERE, LUDLOW, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH.   13.

*For reversal*—None.